# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | | |
|---|---|---|
| TAMMY LAFLEUR | * | CIVIL ACTION NO. 11-1620 |
| VERSUS | * | JUDGE MELANÇON |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993.  Tammy Lafleur, born March 10, 1959, filed an application for supplemental security income payments on September 14, 2007, alleging disability beginning December 1, 2006, due to a disc herniation at the C5-6 level.[1]

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the

---

[1]This case had been remanded by the Appeals Council to obtain additional evidence concerning claimant's physical impairments and residual functional capacity, and to obtain supplemental evidence from a vocational expert if warranted.  (Tr. 68-70).

Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from Dr. L. Boulet dated December 19, 2006 to July 16, 2007**.  On December 19, 2006, claimant complained of neck and right shoulder pain after an automobile accident on December 15, 2006.  (Tr. 201).  X-rays of the right shoulder were normal.  (Tr. 198).  Cervical spine views showed moderate C5-C6 degenerative disc disease.  (Tr. 197).  The diagnosis was degenerative disc disease at C5-C6, and strain of the right trapezius muscle.  (Tr. 196).

On March 21, 2007, claimant stated that she had improved.  (Tr. 193).  She had full range of motion, no restricted movement, and no spasm.  The diagnosis was degenerative disc disease C5-6.

On July 16, 2007, claimant continued to complain of right upper back pain. (Tr. 192).  She was referred to an orthopedist.

**(2) Records from Dr. Vikram S. Parmar dated August 10, 2007 to August 30, 2007**.  Claimant complained of neck pain going into the posterior left shoulder.  (Tr. 207).  On examination, her neck was tender.  She could touch her

2

chin to her chest, and hyperextend her neck.

Neurologically, claimant had 5/5 strength and 2+ reflexes in the upper extremities.  She had normal light touch in the upper extremities.

Dr. Parmar's assessment was cervical neck pain and tenderness.  He prescribed Relafen and referred her for an MRI.  (Tr. 208).

An MRI of the cervical spine dated August 28, 2007, showed a moderate-sized disc protrusion/herniation at C5-6 paracentral to the left with mild cord effacement and with a smaller disc protrusion paracentral to the right.  (Tr. 206).

On August 30, 2007, Dr. Parmar reported that the MRI revealed decreased cervical lordosis, particularly at C5-C6, which showed a herniated C5-6 disk causing central stenosis.  (Tr. 209).  The herniation was worse on the left side, and abutting against the spinal cord on the left side at the C5-C6 level.

On examination, claimant had severe neck tenderness, but it was supple. She had a positive Spurling maneuver on the left side.  She could touch her chin to her chest, and hyperextend her neck.  She had 5/5 strength, 2+ reflexes, and normal light touch in the upper extremities.

Dr. Parmar's impression was left shoulder pain.  He recommended an EMG and physiotherapy.

**(4) Records from Leblanc, Chamberlain & Martin dated August 30, 2007 to September 21, 2007**.[2]  Claimant reported that she was doing better with each treatment.  (Tr. 212).

**(5) Records from Dr. W. Karim dated September 24, 2007**.  Claimant complained of bilateral arm pain and numbness, worse on the right side, with neck pain.  (Tr. 225).  The Motor/Sensory Nerve Conduction/EMG study was abnormal. (Tr. 227).  Dr. Karim's assessment was bilateral median neuropathy at or distal to the carpal tunnel which was severe on the right and moderate on the left, chronic left C5-6 radiculopathy, and bilateral mild ulnar neuropathy at or above the elbow.

**(6) Physical Residual Functional Capacity ("RFC") Assessment dated October 9, 2007**.  Dr. Charles Lee determined that claimant could lift/carry 20 pounds occasionally and 10 pounds frequently.  (Tr. 229).  She could stand/walk and sit about six hours in an eight-hour workday.  She had unlimited push/pull ability, other than as shown for lift and/or carry.  She had no postural limitations.

**(7) Records from Dr. Baylen G. Kimball dated October 31, 2007 to February 3, 2011**.  Claimant opted for pain management rather than surgery.  (Tr.

---

[2]Physical therapists qualify as "other sources" under 20 C.F.R. § 404.1513(e) which sources may be considered but are entitled to significantly less weight than "acceptable medical sources."  *Leval v. Commissioner of Social Sec.*, 2012 WL 1123839, *1 (W.D. La. March 13, 2012).

245).  On October 31, 2007, her pain was 8/10, but was 5/10 on Lortab.  She was prescribed Lortab, Soma, and Xanax.

On August 19, 2010, claimant was on Lortab, Valium, and Soma.  (Tr. 243).  Her pain was relieved by 70%, and ranged from 3 to 10 on a scale of 1-10 (10 being the highest).  On September 16, 2010, Dr. Kimball stated that she had had a good response to medications, and that her activities of daily living seemed adequate.  (Tr. 240).

On December 9, 2010, claimant indicated that her pain had been relieved 50 to 60%.  (Tr. 239).  She was not experiencing any side effects from her medication.  Dr. Kimball decreased her Soma.  (Tr. 238).

On January 6, 2011, claimant's pain was relieved by 60%.  (Tr. 237).  She reported no side effects from her medication.

**(8) Claimant's Administrative Hearing Testimony**.  At the hearing on February 7, 2011, claimant was unrepresented.[3]  (Tr. 21).  The following colloquy transpired between claimant and the ALJ regarding claimant's right to counsel:

> ALJ:  So, you're not represented in this matter, however, you signed a form indicating you wished to waive that right, is that correct?

---

[3]Claimant was represented by an attorney at the prior hearing on January 6, 2009.  (Tr. 35, 85-86).  An Appointment of Representative form dated October 25, 2007, was filed into the record.  (Tr. 80-81).

WTN: Yes, sir.

ALJ: Have you had an opportunity to review the file?

WTN: Yes, sir.

ALJ: Are there any objections?

WTN: No, sir.

ALJ: There being no objections, exhibits 1 through 3A, 1 through 15B, 1 through 2D, 1 through 6E and 1 through 7F are admitted as identified.

(Tr. 21).

In the Decision, the ALJ wrote that: "Although informed of the right to representation, the claimant chose to appear and testify without the assistance of an attorney or other representative." (Tr. 9).

The record reflects that claimant signed a Waiver of Representation by the Claimant prior to the hearing on February 7, 2011. (Tr. 144). Claimant also signed a Waiver by Claimant to Provisions of Privacy Act of 1974 Pertaining to Evidence Received Subsequent to Hearing on February 7, 2011. (Tr. 145).

Claimant also signed a written waiver of representation prior to the hearing. (Tr. 114). She also signed a waiver of her right to inspect, prior to decision, any additional information received by the ALJ in connection with her applications for benefits. (Tr. 115).

6

At the hearing, claimant testified that she was 51 years old.  (Tr. 26).  She stated that she was 5 feet 4 inches tall and weighed 105 pounds.  She reported that she had a driver's license and was able to drive.

Claimant testified that she had completed the 11th grade and half of her senior year.  (Tr. 27).  She stated that she had last worked as a front desk clerk 10 years prior.

Regarding restrictions, claimant testified that she could walk, stand, and sit about 30 minutes.  (Tr. 27-28).  She stated that she could barely lift "one of those 24 bottle of waters."  She reported that she put dishes in the dishwasher, made the bed, and cleaned the lavatory.

As to activities, claimant reported that she watched television about three to four hours a day.  (Tr. 29).  She said that she went grocery shopping and did laundry.

Claimant complained that her pain in the back of her neck had become worse.  She stated that if she pushed herself over the limit, she would have to lie down until the pain went away.  She reported that she had applied for a couple of desk positions, but they would not hire her because of the kind of drugs that she was taking.  (Tr. 30).

**(9) Administrative Hearing Testimony of Dr. George R. Smith, Medical Expert**.  Dr. Smith testified that claimant had pain and imaging studies, but no specific neurological deficit.  (Tr. 25).  He opined that she would have certain restrictions on what she could or could not do at work, including difficulty in working overhead and difficultly looking down on a persistent basis without the ability to change positions.  (Tr. 26).  He noted that she would probably do better looking at a computer monitor and not having to change the position of her head and neck.  He further found that, based on the x-ray findings, "she probably shouldn't maybe lift up to 20 pounds occasionally, no more than 10 pounds on a frequent basis."  He reported that she had no restrictions as to standing or walking.

**(10) Administrative Hearing Testimony of Beverly K. Majors, Vocational Expert** ("VE").  Ms. Majors described claimant's past work as a front desk clerk as light with an SVP of 4.  (Tr. 31-32).  However, she testified that the file had indicated that claimant was sitting for six hours and the heaviest weight lifted was two pounds, so as she had performed it, it would have been a sedentary job.

The ALJ posed a hypothetical in which he asked the VE to assume a claimant age 51 with 11 years of education; with the exertional ability to perform light work with limitations of no overhead lifting or downward looking and must

alternate sit, stand, and walk 30 minutes.  In response, Ms. Majors testified that claimant could return to her past work as a desk clerk.  (Tr. 33).

**(11) The ALJ's Findings**.  Claimant argues that: (1) the ALJ denied her due process of law by failing to obtain a valid waiver as to her right to representation; (2) the ALJ's RFC finding is not supported by substantial evidence; (3) the ALJ posited a defective hypothetical question to the vocational expert, and (4) this case should be reversed and remanded for a step-five determination whether alternate sedentary occupations exist in which claimant might realistically engage.

Claimant first asserts that the ALJ denied her due process of law by failing to secure a valid waiver of her right to representation.  [rec. doc. 13, p. 3].  It is well established that the ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).  When a claimant is not represented by counsel, the ALJ owes a heightened duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts."  *Id*. (*citing Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)).  However, to merit reversal of the ALJ's decision, a claimant who does not validly waive her right to

counsel must prove that she was thereby prejudiced. *Id*.; *Gullett v. Chater*, 973 F.Supp. 614, 621 (E.D. Texas 1997).

The record reflects that the ALJ informed claimant of her right to counsel at the hearing.  (Tr. 28-29).  However, claimant contends that the ALJ failed to comply with the requirements of HALLEX I-2-6-52 (A) [rec. doc. 13, p. 4], which provides as follows:

> The ALJ will open the hearing with a brief statement explaining how the hearing will be conducted, the procedural history of the case, and the issues involved. In supplemental hearings, the ALJ need only identify the case, state the purpose of the supplemental hearing, and describe the issue(s) to be decided.
> Generally, the content and format of the opening statement are within the discretion of the ALJ. However, if the claimant is unrepresented, the ALJ must ensure that the claimant is capable of making an informed choice about representation. For example, the ALJ should ask an unrepresented claimant the following questions on the record:
> 1. Did you receive the hearing acknowledgment letter and its enclosure(s)? (If not, the ALJ will provide the claimant with a copy and the opportunity to read the letter.)
> 2. Do you understand the information contained in that letter concerning representation? (If not, the ALJ will explain the claimant's options regarding representation, as outlined in the acknowledgment letter. Specifically, the ALJ will explain the availability of both free legal services and contingency representation as well as access to organizations that assist individuals in obtaining representation. . . .)

> ***

> Once the ALJ has determined that the claimant is capable of making an informed choice, he or she will secure, on the record, the

10

claimant's decision concerning representation. The ALJ will also enter into the record the acknowledgment letter and enclosure(s) sent to an unrepresented claimant only if the claimant elects to proceed *pro se* at the time of the hearing.[4]

While HALLEX does not carry the authority of law, the Fifth Circuit has held that "where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required."  *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (quoting *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)).  The record reflects that the ALJ did not comply with HALLEX since he failed to ask claimant if she had received a copy of the hearing acknowledgment letter and did not discuss claimant's options concerning representation.

The Commissioner argues that claimant validly waived her right to counsel because she had received several written notices advising her of the right to an attorney, including a two-page pamphlet detailing her rights.  [rec. doc. 12, p. 3; Tr. 74, 78, 81, 82, 126,131-32].  In support of this argument, the Commissioner cites *Castillo v. Barnhart*, 325 F.3d 550, 552-53 (5th Cir. 2003), in which the Fifth Circuit concluded that claimant's receipt of numerous written notices of her right to counsel, along with the ALJ's reminder at the hearing of her right to counsel,

---

[4]HALLEX I-2-6-52 was updated on April 18, 2011, which was subsequent to the hearing at issue.

sufficiently informed her of her right to an attorney such as to constitute a valid waiver.  Here, as in *Castillo*, the record reflects that claimant received several notices of her right to representation and was reminded of that right at the hearing.

Claimant cites *Vanderbilt v. Commissioner of Social Security*, No. 05-891, Rec. Doc. 15 (W.D. La. June 19, 2006), in which the Court found the waiver of right to counsel invalid where the record reflected that claimant's intellect was subaverage and there was no indication that she understood the notices.  Unlike *Vanderbilt*, this claimant had 11 years-plus of education.   Additionally, claimant was represented at the time of the prior hearing; thus, she had to have understood the notices indicating that she had a right to representation.

Further, the record in this case indicates that the ALJ conducted a full and fair hearing, asking claimant about her background, complaints, limitations and activities, as well as having medical and vocational experts present.  Moreover, claimant signed a Waiver of Representation by the Claimant prior to the hearing, and signed a waiver of her right to inspect, prior to decision, any additional information subsequent to the hearing.  (Tr. 21,144, 145).  Under these circumstances, the undersigned finds that the waiver was valid.

Even if the Court were to assume that the waiver was invalid, claimant must still show that she was prejudiced.  *Brock*, 84 F.3d at 728; *Gullett*, 973 F.Supp. at

621.  To establish prejudice, claimant must show that counsel "could and would

have adduced evidence that might have altered the result."  *Brock*, 84 F.3d at 728

(*quoting Kane*, 731 F.2d at 1220).

Claimant asserts that she was prejudiced because counsel would have

explored with Dr. Smith the frequency of her need to change positions of her head

and neck and the length of time required to remain in the alternate position before

returning to her normal duties.  [rec. doc. 13, p. 6].  She also argues that had she

had representation, counsel could have cross-examined the vocational expert

regarding her past relevant work, which was properly classified as sedentary,

rather than light as in the ALJ's hypothetical.  [rec. doc. 13, p. 7].

Dr. Smith testified that claimant "would have difficulty looking down on a

persistent basis without having the ability to change positions."  (Tr. 26).  This

was based on his review of the records, and not an actual physical examination.

On the other hand, claimant's treating orthopaedic surgeon, Dr. Parmar, found on

both examinations that claimant could touch her chin to her chest and could

hyperextend her neck.  (Tr. 207, 209).

Generally, the opinion of a examining source is entitled to more weight than

to the opinion of a source who has not examined a claimant.  20 C.F.R.

§ 404.1527(c)(1).  Additionally, a treating physician's opinion is entitled to more

13

weight than opinions from other sources.  20 C.F.R. §1527(c)(2).  Whether pain is

disabling is an issue for the ALJ, who has the primary responsibility for resolving

conflicts in the evidence.  *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir.

2001); *Carrier v. Sullivan,* 944 F.2d 243, 247 (5th Cir.1991).

Here, the ALJ gave claimant the benefit of the doubt and asked the

vocational expert to assume that she could not perform any downward looking.

Even with the ALJ's restriction in the hypothetical of "no" downward looking, the

VE still opined that claimant could perform her past work as a desk clerk.  (Tr.

32).  Thus, the undersigned does not find any prejudice resulted from the failure to

further explore Dr. Smith's testimony regarding her neck limitations.

Likewise, the undersigned does not find any prejudice resulting from the

VE's testimony.  [rec. doc. 13, p. 7].  Ms. Majors testified that the Dictionary of

Occupational Titles classified the job of hotel desk clerk as light with a Specific

Vocational Preparation of 4.  DICOT 238.367-038.  However, the VE stated that

the job, as claimant performed it, would have been a sedentary job.  (Tr. 31).

Under the Social Security regulations, a claimant will be found to be "not

disabled" when it is determined that he or she retains the RFC to perform: (1) the

actual functional demands and job duties of a particular past relevant job; *or* (2)

the functional demands and job duties of the occupation as generally required by

employers throughout the national economy.  (emphasis added).  SSR 82-61
(1982) (citing 20 C.F.R. §§404.1520(e) and 416.920(e)).  Based on the
hypothetical questioning, and the explanation of how claimant performed her past
work, the VE found that claimant could return to her past relevant work.  (Tr. 14).
Because the ALJ is allowed under the regulations to rely on the description in the
DOT as to how claimant's job is usually performed in the national economy,
claimant's argument lacks merit.

Next, claimant argues that the ALJ's RFC finding is not supported by
substantial evidence.  [rec. doc. 13, p. 8].  The ALJ found claimant capable of
doing light work with no overhead lifting, and capable of standing and walking 30
minutes.  (Tr. 14).  Claimant argues that there is no basis for the time period, that
is, frequency, imposed by the ALJ for the sit, stand, and walk option because the
medical expert provided none.

Dr. Smith found that claimant had no restrictions as to walking or standing.
(Tr. 26).  Based on claimant's testimony, the ALJ apparently gave her the benefit
of the doubt, and included a restriction of alternating sitting, standing, and walking
for 30 minutes in the hypothetical to the vocational expert.  (Tr. 32).  Even with
that restriction, the VE testified that claimant would be able to return to her past
relevant work, which is classified as light under the DOT.  (Tr. 32-33).

A claimant is not entitled to procedural perfection in administrative proceedings; remand is appropriate only if a claimant demonstrates that she was prejudiced by a specific failure.  *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).  Here, the ALJ found claimant's residual functional capacity to be *more* restrictive than the medical expert assessed.  This was beneficial, rather than prejudicial, to claimant.  Thus, this argument lacks merit.

Claimant's next argument is that the ALJ's hypothetical was defective because it assumed that she could perform light activity.  [rec. doc. 13, pp. 9-11]. Again, the VE testified that claimant's past job as a hotel desk clerk was classified as light under the DOT, but sedentary as she had performed it.  (Tr. 31-32).  Under the regulations, the ALJ may find a claimant able to perform her past relevant work when she can perform: (1) a past relevant job based on a broad generic, occupational classification of that job; (2) the particular functional demands and job duties peculiar to an individual job as she actually performed it, or (3) the functional demands and job duties of the job as ordinarily required by employers throughout the national economy.  SSR 82-61.  As the ALJ complied with the regulations for determining that claimant could perform her past work, his opinion is entitled to deference.

16

In her reply brief, claimant adds the argument that the ALJ failed to include in the hypothetical the fact that she was "limited in overhead reaching." [rec. doc. 15, p. 5].  This argument was not raised in her original brief and does not address a point raised in defendant's brief as required by the Court's Social Security Scheduling Order.  [rec. doc. 6].  In any event, her treating orthopedist, Dr. Parmar, did not impose such restriction.  (Tr. 20).  As the ALJ's hypothetical to the vocational expert reasonably incorporated all disabilities of the claimant *recognized by the ALJ*, and the claimant had the opportunity to correct deficiencies in the ALJ's question, the ALJ's findings are entitled to deference.  *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Finally, claimant requests reversal and remand for a determination as to whether alternate sedentary occupations exist.  [rec. doc. 13, p. 11].  Specifically, she argues that she was restricted, based on Dr. Smith's testimony, from all work activity which required downward looking.  (Tr. 32).  However, even when the ALJ asked the VE to assume that claimant could do no downward looking, she still found that claimant could return to her past work.  (Tr. 32).  As the ALJ determined at Step 4 of the sequential evaluation process that claimant was

capable of performing her past work, there was no need to proceed to Step 5 to determine whether she could do other work.  *Bowling*, 36 F.3d at 435.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT,**

18

**EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed December 5, 2012, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

Copy sent:  TLM
On:  12/5/2012
By:  MBD